[Cite as *In re Z.Y.*, 2026-Ohio-3099.]

**IN THE OHIO COURT OF APPEALS**
**FIFTH APPELLATE DISTRICT**
**RICHLAND COUNTY, OHIO**

| | |
|---|---|
| IN RE: Z.Y. | Case No. 2026CA0052 |
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2024 DEP 00180 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: August 11, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; David M. Gormley, Judges

**APPEARANCES:** WESLEY A. JOHNSTON, for Appellant-Father; SARAH EXTEN, for Appellee-Agency; JAMES BLUNT, II, for Mother; JOHN S. DILTS, Guardian Ad Litem; M. LORE WHITNEY, Counsel for Child

*King, P.J.*

{¶ 1} Appellant father, A.R., appeals the May 1, 2026 decision of the Richland County Juvenile Court terminating his parental rights and granting permanent custody of the child to appellee, Richland County Children Services Board ("RCCSB"). We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 16, 2024, RCCSB filed a complaint for the temporary custody of Z.Y. born April 2023, alleging the child to be dependent.[1] Father of the child is A.R., appellant herein; mother is T.Y. The initial concerns centered on mother's substance abuse

---

[1]Two additional children were involved, but are not a part of this appeal.

and her non-responsiveness to agency contact and father's unknown whereabouts. The child had been placed in emergency shelter care on September 13, 2024.

{¶ 3} An adjudicatory hearing was held on October 25, 2024. Father admitted and agreed to a finding of dependency. By judgment entry filed November 6, 2024, the trial court found the child to be dependent with regard to father, subject to determination of the interests of mother; temporary custody of the child remained with RCCSB. On November 22, 2024, paternity was established through DNA testing. At the time, the child was already in foster care for over two months.

{¶ 4} A case plan for mother was filed on January 2, 2025; services for father were to be added by case plan amendment if needed. Case reviews were filed on April 17, May 21, and October 15, 2025, and April 14, 2026.

{¶ 5} On September 8, 2025, RCCSB filed a motion for permanent custody of the child. On November 26, 2025, father filed a motion for legal custody of the child, a motion for father's parents to be considered and investigated as potential legal custodians of the child, and a motion for visitation. Father's motion to consider and investigate his parents as potential legal custodians was granted.

{¶ 6} Hearings before a magistrate were held on January 29, and February 12, 2026; neither parent appeared, nor did the paternal grandparents. At the direction of the magistrate, a home assessment of the paternal grandparents was completed and filed on April 2, 2026. By decision filed May 1, 2026, the magistrate denied father's motion for legal custody and legal custody to his parents, terminated all parental rights, and granted permanent custody of the child to RCCSB. By judgment entry filed on the same date, the trial court approved and adopted the magistrate's decision. Neither parent filed objections.

{¶ 7}   Father filed an appeal with the following assignments of error:

I

{¶ 8}   "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TERMINATING FATHER'S PARENTAL RIGHTS AND GRANTING PERMANENT CUSTODY OF THE CHILD TO RICHLAND COUNTY CHILDREN SERVICES."

II

{¶ 9}   "THE TRIAL COURT'S DECISION NOT TO CONSIDER FATHER'S LEGAL CUSTODY MOTION WAS CONTRARY TO LAW AND NOT IN THE BEST INTERESTS OF Z.Y."

I

{¶ 10}   Father claims the trial court erred in granting permanent custody of the child to RCCSB.  We disagree.

{¶ 11}   At the outset, we note father failed to file objections to the magistrate's decision under Juv.R. 40(D)(3)(b); thus, he has waived all but plain error on appeal.  As discussed in *In re P.E.,* 2023-Ohio-2438, ¶10-11, (12th Dist.), quoted by this court in *In re G.S.,* 2025-Ohio-2949, ¶ 13 (5th Dist.):

"By failing to object to the magistrate's decision in a case involving termination of parental rights," such as the case here, "an appellant waives the right to assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law." *In re Stephens,* 12th Dist. Butler Nos. CA2001-01-018 and CA2001-01-021, 2001-Ohio-8711, 2001 Ohio App. LEXIS 4451, *4 (Oct. 1, 2001).  The Rules of Juvenile Procedure similarly "provides that, except for

a claim of plain error, a party waives the right to assign error on appeal with respect to the juvenile court's adoption of any factual finding or legal conclusion 'unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).'" *In re M.R.,* 12th Dist. Butler Nos. CA2018-07-145 thru CA2018-07-147, 2018-Ohio-5047, ¶ 16, quoting Juv.R. 40(D)(3)(b)(iv).

"This rule 'embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal.'" *In re R.A.,* 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 23, quoting *In re Etter,* 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998) ("[t]he waiver under Juv.R. 40[E][3][b] embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal").

{¶ 12} Nowhere in his appellate brief does father assert a claim of plain error. "'This court has previously ruled that unless the appellant argues a claim of plain error, the appellant has waived claimed errors not objected to below.'" *In re P.E.* at ¶ 12, quoting *In re K.S.,* 2023-Ohio-1951, ¶ 34 (12th Dist.). Therefore, under normal circumstances, father would be precluded from challenging the permanent custody decision on appeal. However, we concur with the court in *In re P.E.,* finding because "permanent custody decisions are tantamount to the death penalty in a criminal case," this court will consider whether the decision granting permanent custody of the child to RCCSB constitutes plain error. *In re P.E.* at ¶ 12.

{¶ 13} Father argues the trial court's decision was against the manifest weight of the evidence. On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed. 1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis in original.)

{¶ 14} In weighing the evidence, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 15} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 16} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must conduct when ruling on a motion for permanent custody.

{¶ 17} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 18} Admittedly, father did not have a case plan to follow. The caseworker explained although father completed paternity testing, he did not contact or engage with the agency. T. at 56-57. The agency contacted father and sent letters to his address of record, but he failed to respond. T. at 56. Father was incarcerated at times and had recently committed criminal offenses i.e., assault and criminal damaging. T. at 57-58. The caseworker opined father would not be appropriate for the child because the entire time that the child has been in the agency's custody, he had never met with or visited the child; it had been more than ninety days since father last had contact with the child. T. at 58-59. Father did not reach out to the agency to inquire about any hearing dates or any services. T. at 69, 78, 83. On cross-examination, the caseworker explained the agency considered father to have abandoned the child and therefore the agency was not willing to start up any visitation since the motion for permanent custody had already been filed. T. at 75. Once the motion was filed, the agency's permanency goal was adoption, not reunification. T. at 83. Father did not attend the final hearings and his counsel did not have any communication with him as to why he was not present. T. at 91.

{¶ 19} In approving and adopting the magistrate's decision, the trial court found father received court appointed counsel on October 20, 2025, but "has no active participation in this matter." May 1, 2026 Magistrate's Decision at 5. Father obtained counsel almost a year after paternity was established and while the motion for permanent custody was pending. Father has never visited the child nor "provided support, in money or in kind." *Id.* at 9. He "avoided the caseworker and failed to meet with her for consideration of appropriate Case Plan services." *Id.* at 7. The trial court found under the "definition contained in R.C. 2151.011(C)," father has abandoned the child ("a child shall be presumed abandoned when the parents of

the child have failed to visit or maintain contact with the child for more than ninety days").
*Id.* Under the R.C. 2151.414(E) factors, the trial court found subsections (4) and (10) to apply to father: "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child" and "(10) The parent has abandoned the child."

{¶ 20} Given the cited testimony, we find the trial court's findings are supported in the record.

{¶ 21} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies

or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} The child is in foster care with a sibling and is settled and doing very well. T. at 60-62, 85. The foster parents are interested in adopting the siblings and there is a bond between the foster parents and the children. T. at 63-64. The caseworker testified the child has a need for permanency and not keeping the child with the sibling would be detrimental to the child's best interest. T. at 65.

{¶ 23} The guardian ad litem recommended that the child be placed in the permanent custody of RCCSB to be kept with a sibling and made available for adoption. Second Report of Guardian Ad Litem filed January 20, 2026.

{¶ 24} In approving and adopting the magistrate's decision, the trial court determined the child has a bonded and loving relationship with his foster family, is placed with a sibling, and is in need of a legally secure permanent placement. The trial court's decision demonstrates that it considered all relevant factors under R.C. 2151.414(D)(1). May 1, 2026 Magistrate's Decision at 9-11. The trial court noted father's "belated appearance in the case and general disinterest" under its R.C. 2151.414(D)(1)(d) analysis. *Id.* at 10.

{¶ 25} Given the cited testimony, we find the trial court's findings are supported in the record.

{¶ 26} Upon review, we find father has failed to establish that an obvious error occurred in the trial court proceedings which affected his substantial rights. Based upon the testimony presented, we do not find that the trial court erred in terminating his parental rights and granting permanent custody of the child to RCCSB; we do not find that the trial court lost its way.

{¶ 27} Assignment of Error I is denied.

II

{¶ 28} In his second assignment of error, father claims the trial court abused its discretion in denying his motion for legal custody to himself or his parents. We disagree.

{¶ 29} We have already determined that the trial court did not err in granting permanent custody of the child to RCCSB instead of granting legal custody to father.

{¶ 30} As explained by this court in *In re J.C.,* 2024-Ohio-1505, ¶ 35 (5th Dist.):

A trial court does not even need to find by clear and convincing evidence that a grandparent is not a suitable placement option. *In re A.D.,* Cuyahoga App. No. 85648, 2005-Ohio-5441, ¶ 12. Instead, it is within the trial court's discretion to determine whether to place children with a relative, such as grandmother. *In re Patterson,* 134 Ohio App.3d 119, 129-130, 730 N.E.2d 439 (9th Dist.1999); *In re Poke,* 4th Dist. Lawrence App. No. 05CA15, 2005-Ohio-5226.

{¶ 31} A parent does not have any standing to argue that the trial court abused its discretion in failing to grant legal custody to a relative; "rather, the challenge is limited to whether the court's decision to terminate parental rights was proper." *In re S.G.,* 2016-Ohio-8403, ¶ 52 (3d Dist.), citing *In re Pittman,* 2002-Ohio-2208, ¶ 90 (9th Dist.); *accord In re A.C.,* 2023-Ohio-3072, ¶ 56 (5th Dist.), quoting *In re J.F.,* 2018-Ohio-96, ¶ 42 (8th Dist.). A trial court "is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody." (Citations omitted.) *In re J.C.* at ¶ 36. "[I]f permanent custody to the agency is in the children's best interests, legal custody to a relative necessarily is not." *In re J.F.* at ¶ 42.

{¶ 32} We have already determined that the trial court did not err in finding the child's best interest was best served with permanent custody to RCCSB and our analysis can end there. Nevertheless, we note paternal grandparents did not file a motion to intervene or a motion for legal custody, but were identified as proposed legal custodians in a motion filed by father. They did not appear at the hearings. The record does not indicate that the grandparents signed a statement of understanding as required under R.C. 2151.353(A)(3) ("A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody").

{¶ 33} The caseworker testified father's parents first expressed interest in assuming legal custody after the child had been in foster care for over a year. T. at 67. The grandparents, along with father, did not have any contact with the child for a significant amount of time. *Id.* The grandparents never visited the child while the child had been in the agency's custody for over a year. T. at 85.

{¶ 34} In approving and adopting the magistrate's decision, the trial court found the grandparents had minimal contact with the child before and after the agency's involvement and they "previously accepted placement of other grandchildren, later requesting their removal." May 1, 2026 Magistrate's Decision at 7.

{¶ 35} Given the cited testimony, we find the trial court's findings are supported in the record.

{¶ 36} Upon review, we find the trial court did not abuse its discretion in finding that the best interest of the child was best served by denying the paternal grandparents legal custody.

{¶ 37} Assignment of Error II is denied.

{¶ 38} For the reasons stated in our accompanying Opinion, the judgment of the Richland County Juvenile Court is AFFIRMED.

{¶ 39} Costs to Appellant.

By: King, P.J.

Baldwin, J. and

Gormley, J. concur.